IN THE UNITED STATES DISTRICT COURT
FOT THE Eastern DISTRICT COURT OF PENNSYLVANIA

SHAMEL JONES
    PLANTIFF,
V.
JOHN WETZEL, SECRETARY OF
THE PENNSYLVAINA DEPARTMENT
OF CORRECTIONS, GEORGE LITTLE,
    DEFENDANTS.

DOCKET#: 1:22-CV-0358

FILED SCRANTON
MAR 10 2022
Per_____ DEPUTY CLERK

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff Shamel Jones, does so files this complaint and states the follows:

### A. PARTIES.

1. Plantiff Shamel Jones, is an individual who is currently incarcerated at the State CDorrectional Institution at Phoenix("SCI Phoenix"), Located at 1200 Mokychic Road, Collegeville Pa. 19426.

2. Defendant George Little is an adult individual who is employed by the Commonwealth Pennsylvania as the Acting Secretary of the Department of Corrections from about october 1, 2021 to the present, and maintains offices located at technology PKWY, Mechanicsburg, Pa. 17050. Defendant little is being sued in his individual Capacity.

3. Defendant John Wetzel is an adult individual who was employed by the Commonwealth Pennsylvania as the Secretary of the Department of Corrections at all relevant times until his resignation on or about October 1, 2021, and who until his resignation maintained offices located at 1920 Technology Pkwy, Mechanicsburg, Pa. 17050. Defendant Wetzel is being sued in his individual Capacity.

### B. JURISDICTION & VENUE

4. This Action is being brought under the Civil Rights Act, 42 U.S.C §1983 which provides a cause for the "Deprivation of any rights, priveledges, or immunities secured by the Constitution and the Laws" of the United States.

5. This HYonorable Court has Jurcisdiction over these federal claims pursuant to 28 U.S.C. §§1331 & 1343.

6. this Complaint also includes pendant state law claims, over which this Honorable Court has Supplemental Jurcisdiction pursuant to 28 U.S.C§ 1367.

7. Venue is proper in the Eastern District of Pennsylvania pursuant to 28.U.S.C § 1391 because a substantial part of the events or omissions giving rise to this claim occurred within the territorial Jurisdiction of this District and the Defendants are subjected to personal Jurisdiction within this District.

## C. FACTS

8. Mr. Jones was at all relevant times incarcerated and in custody of the Pennsylvania Department of Corrections.

9. In November 2018, while being incarcerated at SCI-Albion, Mr. Jones was Placed in Solitary Confinement in the Restricted Housing Unit ("RHU") After being involved in investigation to introduce illegal substances within the facility.

10. Mr. Jones Remained in Solitary Confinement until he was transfered to SCI-Greene To a STGMU-Progam, In aproximately Febuary Late March of 2019.

11. Upon Arriving at SCI-Greene, Mr Jones was told for the first Time that he was Being Placed on "RRL" Status.

12. RRL, Which Stands for "Restricted Release List" is a state of Administrait Custody where an inmate is held in solitary confinement in the RHU, and is subject to severe restrictions on his ability to interact with anyone, whether it be staff, other inmates or visitors from outside the prison.

13. Thus, Mr. Jones's status as an "RRL" inmate is not for any of the DC-ADM Penological reasons, but is solely for administrative purposes.

### REMOVAL FROM RRL Status.

14. Mr. Jones has attempted to appeal his Placement on the RRL, but has been advised as recently as July 30, 2021, that "in accordance with DC-ADM 802 Administrative Custody Proceedures, appeal of placement on the Restricted Release List is not Permitted."

15. In the nearly 4 years since his placement on RRL, Mr. Jones has never once had the opportunity to challenge his placement on RRL, with either Secretary Wetzel or Little, or to be heard from him in any way, although he is the only person with authority to remove his RRL designation.

16. Pursuant to the policy of the Pennsylvania Department of Corrections, inmates placed on RRL status may only return to the general population with the express authorization of one person, the Secretary of the DOC.

17. Absent that authorization, the inmate is held in solitary confinement indefintly.

18. In 2012, an annual review by the secretary was begun. Prior to the Secreatary's annual review, the facility's Deputy Superintendent and Superintendent, along with the Regional Deputy Secretary and Executive Deputy Secretary all "VOTE" On whether an inmate should remain on the RRL.

19. This "Vote Sheet" is provided to the sole decision maker, the secretary who reviews the votes, comments and decides whether to release an inmate from the RRL.

20. Secretary Wetzel has previously testified that to decide whether an inmate should remain in solitary confinement, he tries to "Synthesize eveyone's recomendation and come up with the best decision for the department."

21. In this case, Secratary Wetzel and Secretary Little have not had the the benefit of hearing from Mr. Jones directly when making his decision, because prison officials are not required to-and-do not-send an RRL Status inmate's written statements to the secretary, even though the Secretary is the sole decision maker.

22. Notwithstanding Secretary Wetzel's, and then Secretary Little's, singular role in determining **Mr. Jones's Status, he has been advised by various members of the prison staff that his RRL status is Permanent, and that he will never be released back into general population.**

## CONDITIONS OF CONFINEMENT

23. For the past nearly Four Years, since 2019 through the present date, Mr. Jones has been sublleeted to the following deprivations and inhumane treatment:

   A. Mr. Jones was given only 10-15 minutes to eat his meals alone in his cell.

   B. Mr. Jones was served lower-quality food than inmates in general prison population.

3.

C. Mr.Jones was prohibited from participating in any of the educational programs which are available to prisoners in the general population.

D. Mr.Jones was prohibited from participating in any organized activities in the prison.

E. Mr.Jones was prevented from having contact visitation with clergy and family members.

F. Mr.Jones was prohibited from having physical contact with any visitor, as all physical contact is forbiden by"PA.DOC" policy.Mr.Jones was permitted one visit per week,which was required to take place through a glass and concrete partition.

G. Mr.Jones was subjected to a mandatory strip search and the possibility of a cavity search every time he leaves and enters his cell.

H. Mr.Jones was placed in handcuffs and shackles every time he leaves his cell and remained handcuffed and shackled until he was securely locked in another area,such as the exercise cage or the shower.

I. Mr.Jones was subjected to extreme limits on the amount of personal property he has been allowed and permitted to keep in his cell,which are much more limiting than those imposed on persons in general population

J. Mr.Jones has been deprived of any meaningful interaction with any other prisoner,due to a strict "No talking" policy for prisoners in solitary confinement.

H. Plantiff Jones has been deprived of any meaningful interaction with any prison official or staff member.

L. Plantiff Jones,was deprived of the opportunity to participate in any form of communal religious worship or prayer,despite the fact that he is a devout"Moslem",an offshoot of Islam.who is of Moorish American

4.

M. Plantiff Jones, has been deprived the opportunity to participate in any vocational, recreational, or educational programs within the prison, forcing him to spend the vast mallority of his time idle in his cell, with no constructive or positive use of his time.

N. Plantiff Jones, was kept in cells with doors which were sealed around their edges, to prevent any inmates from talking through the doors.

24. Thus for the past Four years and counting, The Plantiff has been almost totally deprived of all meaningful human contact, physical activity, personal property, and mental stimuation.

25. Adding to the mental strain created by the already inhumane conditions of being in perpetual solitary confinement, with no hope of relief, the cell conditions which Plantiff has been subjected to are significantly more oppressive than those in the general population.

26. For example:

a. Plantiff is only permitted to shower three days per week, on weekdays.

b. Plantiff has been confined to cells illuminated by artificial lights, 24 hours per day. the lights are never turned off.

c. During the entire period of solitary confinement, plantiff Jones, has endured the extreme noise which is a hallmark of restricted housing units.

d. Unlike in the General population, the housing units on which plantiff was confined were subject to checks every fifteen minutes during the day, and every thirty minutes at night, meaning a corrections officer would enter and exit each tier of the area through a solid steel door. the repeated process of entry and exit from each tier, and use of bright flashlights during the checks, made sleep extremely difficult through the night.

e. Due to the 24 hour lighting and noise, plantiff has endured extreme sleep disruption.

f. The small window in plantiff's cell is tinted glass, which both prevents the natural light from entering his cell, and does not allow him to see anything outside his window. When plantiff notified staff here at SCI-PHOENIX" That the obstruction to the light and view of the outside world were negatively affecting his mental health, plantiff was then advised that "There is no policy requirement regarding the windows on your housing unit".

G. The perpetual lighting, coupled with the tinted nature of his cell window, has caused the plantiff to experience the disorienting sesation that there was never a meaningful transition from daylight to darkness, for nearly four years.

h. During plantiff's entire period of solitary confinement, plantiff was confined to a cell containing a bed, steel toilet, steel sink, steel desk and stool, and cabinet. as such, plantiff has very little remaining room to exercise or walk around.

i. Plantiff was restricted to going to "Yard" in an exercise cage for one hour per weekday, containing no weights, or exercise equipment of any kind. since June 21, 2021, he is suposed to recieve two hours of "Yard" each day, although in practice he has not recieved this each day.

II. The fully enclosed cages are approximately seventy-five(75) square feet, providing less space than the cell in which plantiff spent the remainder of his time.

k. On Saturdays and Sundays, plantiff is held in his cell for twenty-four hours per day, without any opportunity to shower or go to the exercise cage in the yard.

27. Thus, for nearly four years, plantiff has been almost totally deprived of all meaningful human contact, physical activity, personal property, and mental stimulation.

6.

28. All of these conditions and restrictions were significantly harsher than those which were imposed upon prisoners in general population of the Department of Corrections facilities.

29. Yet, they were imposed on plantiff, purely for administrative reasons, rather than for any discipinary purpose.

30. Indeed, since his transfer to SCI-Waymart in 2019, plantiff has been practally misconduct-free, save for a minor infraction for making a 3-way phone call and letter kiting to an alledged inmate being housed in an alledged institution.

31. Plantiff has never been told what specific steps he must take to be elligible for celease from RRL status; to the contrary, he has been advised that he will remain on RRL status for the remainder of his incarceration, which will not end until March of 2044.

32. On July 3, 2021, plantiff recieved a memo from secretary Wetzel directed to inmates on RRL, status discussing the creation of Intense Management Unit, or simply put ("IMU").

33. Secretary Wetzel's memo stated, in part: Your path off RRL is for you to maintain a positive adjustment and obtain unit team/administration's support for removal. Final approval currently remains at the discretion of the secretary."

34. As vaguely worded as this directive is, it is already out of reach of plantiff who has been advised by the prison staff that he will remain on RRL permantly, thus there is no way for him to "obtain unit/administration's support for removal."

35. Further demonstrating the hopeless nature of plantiff's plight, is the fact that in June 2021, plantiff's annual review was conducted without giving him any notice of the review or any opportunity to be heard even by the local prison officials on his prison status.

7.

36. Plantiff Jones is in serious danger of experiencing debilitating psychological impairments for the rest of his life,and will suffer the worsening effect on his mental health as his solitary confinement continues.

37. the repeated process of entry and exit from each tier,and the use of bright flashlights during the checks,made sleep extremely difficult through the night.

38. Due to the 24 hour lighting and noise,Plantiff,Jones has only recieved an average of three to four hours a sleep per night,causing extreme sleep disorder and disruption to his circadian rhythms.

39. The perptual lighting caused Plantiff Jones to experiencing the disorienting sensations that were never a meaningful transition from day light to darkness,for 4 years.

40. For the past 4 years Plantiff,Jones was confined to cells which was and colder then the general population cells.on winter nights,the difficult sleep conditions all the more tortuous.

41. The risks inherent in long-term solitary confinement are obvious.

42. At all times relevant to this lawsuit,Defendant Wetzel knew the risks proposed by prolonged solitary confinement,and yet he failed to take reasonable measures to end the deprivation of Mr.Jones's basic human needs.

43. Defendant Wetzel has previously testified that he aware of the body of literature describing the effects of long-term solitary confinement.

44. Dr.Stuart Grassian is a Board Certified Psychiatrist who was on the faculty of the Harvard Medical School for over twenty-five years.He is a world renowned expert on the psychatriac effects of solitary confinement and has had extensive experience in evaulating the psychatriac effects of solitary confinement.

45. In the course of his professional involvement,Dr.Grassian has opined as an expert regarding the psychiatric impact of federal and state segregation and disciplinary units.

8.

46. Dr.Grassian's body of scholarly work was recognized by Supreme Court Justice Anthony Kennedy in his concurring oppion in Davis V.Ayala,576 U.S. 257,289 (2015)("research still confirms what this Court suggested over a century ago:Years on end of near-total isolation exact a terrible price... common side effects of solitary confinements include anxiety,panic,withdrawal, hallucinations,self-mutilation,and suicidal thoughts and behavior").

47. Dr.Grassian is the author of Psychiatric Effects of Solitary Confinement, 22 Wash.U.J.L.&Pol'y 325(2006)and several other scholarly works on the psychiatric effects of solitary confinement.

48. Defendant Wetzel has previously admitted he was specifically familiar with Dr.Grassian's research,and had discussed Dr.Grassian's findings with other doctors.

49. Defendant Wetzel has previously admitted that an inmate's mental health should be considered when placing an inmate in long-term solitary confinement.

50. In recent years,the use of solitary confinement has been publicy condemned as unnecessary and inhumane.When he described the Davis case, cited above,Justice Kennedy told the House Appropiation Subcommittee on Financial Services and General Government:"This idea of total incarceration 'Just isn't working,and it's not humane....Solitary confinement literally drives men mad."

51. In 2016,the Department of Corrections publicly acknowledged "the need to reduce the use of administrative segregation (Known as restrictive housing in Pennsylvania)"and vowed that it "is committed"to doing this.

52. Yet Plantiff has remained in solitary confinement on RRL status for nearly five years now,with every indication that he will continue on RRL status as long as he remains in DOC custody.

## D.LEGAL standard.

53. The Supreme Court has interpreted the Eight Amendment "to impose affirmative duties on prison officials to 'provide humane conditions of confinement.'"Young v.Martin,801 F.3d 172,177(3d Cir.2015)(quoting Farmer v.Brennan,511 U.S. 825,832 (1994).

9.

54. The United States Supreme Court has explained "that length of confinement [in isolation] cannot be ignored in deciding whether the confinement meets constitutional standards." Hutto v. Finney, 437 U.S. 678, 686 (1978); see also Young, 960 F.2d at 364 ("The duration and conditions of segregated confinement cannot be ignored in deciding whether such confinement meets constitutional standards.").

55. The Third Circuit has followed. See Union Cnty. Jail Inmates v. Di Buono, 713, F.2d 984, 1000 (3rd Cir. 1983)(Length of confinement a factor in analyzing conditions under the Constitution); Peterkin v. Jeffes, 855 F.2d 1021, 1025 (3rd Cir. 1988)("objective factors which a court must examine in prison conditions cases include basic human needs such as food, shelter, and medical care as well as sanitation, safety, the physical plant, educational/rehabilitation programs, the length of confinement, and out of cell time."); Nami v. Fauver, 82 F.3d 63, 67, (3d Cir. 1996)("the length of confinement, the amount of time prisoners must spend in their cells each day, sanitation, lighting, bedding, ventilation, noise, education and rehabilitation programs, opportunities for activities outside the cells, and the repair and functioning of basic physical facilities such as plumbing ventilation and showers").[1]

---

[2] Accord DeSpain v. UpHoff, 264 F.3d 965, 974 (10th Cir. 2001)("in general, the severity and duration of deprivations are inversely porportional, so that minor deprivations suffered for short periods would not rise to an eigth amendment violation, while "substantial deprivation of shelter, food drinking water, and sanitation 'may meet the standard despite a shorter duration." Sheley v. Dugger, 833 F.3d 1420, 1429 (11th Cir. 1982)("the duration of soliyaryy confinement cannot be ignored by courts); Pepperling v. Crist, 678 F.2d 787 789(9th Cir. 1982)("The deprivations associated with an institutional lock up, including 24 hour confinement, and curtailment of all association, exercise abnormal vocational and educational activity, they constitute a due process violation, as well as a violation of the eigth amendment, if they persist too long."); O'Brien v. Moriarty, 489 F.2d 941, 944 (1st Cir. 1974) (Imposing inappropriately, or for to long a period, even the permissible forms of solitary confinement might violate the eighth amendment. Cases upholding instances of solitary confinement involve most often its imposition

10.

as a short-term punnishment for disciplinary infractions.").

---

56. In Sandin v.Conner,515 U.S.472 (1995)the Supreme Court concluded that state-created liberty intrests arise when a prison's action imposed an "Atypical and significant hardship on the inmate in relation to the ordinary incidents of Prison life." Id at 484.

57. In Shoats v.Horn,the third Circut held"we have no difficulty concluding that eight years in administrative custody,with no prospect of inmeadiate release in the near future,is 'atypical'in relation to the ordinary incidents o prison life,and that [Plantiff's] eight-year confinement sublects him to conditions that differ significantly from 'routine' prison conditions in Pennsylvania state institutions"thereby posing a significant hardship on the plantiff.213 F.3d 140,144(3d Cir.2000).

58. In Hewitt v.Helns,459 U.S.460,476(1983),the Supreme Court explained that inmates who were being placed in solitary confinement for administrative rather than disciplinary-reasons,were entitled to due process,The Court explained what process was due:

An inmate must merely recieve some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation. Ordinarily a written statement by the inmate will acomplish this purpose although a prison administrators may find it more useful to permit oral presentations in cases where they believe a written statement would be ineffective.

59. This principle was reaffirmed in Wilkinson v. Austin,545 U.S. 209, 228-29(2005)when the Supreme Court held that due process required (a) notice of the charges against a prisoner,(b)an opportunity to be heard,and (c) notice of any adverse decision.

60. In 2017,the Third Circuit has emphasized that"this right to procedural due process protections is neither abstract nor symbolic,but both meanigful and required."Williams v.Sec'y Pa.Dep't of Corr.843 F.3d 549(3rd. cir.2017).

11.

## COUNT 1-Violation OF THE EIGHTH AMENDMENT
## DELIBERATE INDIFFERENCE

61. The averments in the preceding paragraphs are incorporated by refrence, as if set forth in full herein.

62. Defendant Wetzel Promulgated, approved, implemented and enforced a policy which required RRL status prisoners to remain in solitary confinement until the Secretary approved them to be released from solitary confinement back into the general population.

63. At all times relevant to this Complaint, Defendant Wetzel was acting under Color of state law and in their capacities as representives of the PADOC.

64. As a result of this policy, Plantiff Jones, was held in continuous solitary confinement from That of July 2019, Through the present.

65. Defendant Wetzel is well aware of the scholarly research which indicated the severely negative impact of long term solitary confinement on mental health.

66. Defendant Wetzel has exhibited extreme deliberate indifference to the Health and well being of Plantiff Jones, by promulgating, approving, implementing and enforcing the policy which kept The Plantiff Jones, in solitary confinement, without any ability to be heard by them or to improve his chances of being removed from RRL.

67. As a direct and foreseeable result of defendant Wetzel's deliberate indifference, Plantiff Jones, has suffered:
   a. Loss of Mental Health;
   b. Stress;
   c. Anxiety;
   d. Depression;
   e. Mental Anguish;
   f. Fear; and
   g. Treatment which fell below the minimum standards required bt the Eighth Amendment to the Constitution.

Wherefore, Plantiff Shamel Jones respectfully requests that this honorable Court enter Judgement in his favor and against Defendants Wetzel, in an amount in excess of $75,000.00, and all other relief permitted by law.

13.

## COUNT 2-VIOLATION OF THE FOURTEENTH AMENDMENT
### VIOLATION OF DUE CPROCESS RIGHT

68. The averments in the proceeding paragraphs are incoropated by refrence, as if set fort in full herein.

69. Plantiff Jones has been held in solitary confinement for FOUR YEARS And Counting without any explanation for his status or any opportunity to challe it.

70. Plantiff Jones is entitled to due process in regards to his placement on the RRL, Including an opportunity to be heard by the decision-maker, the Secretary of the Department of Corrections.

71. Plantiff Jones, has not been permitted any type of process whatsoever.

72. He never had the opportunity to address the decision-maker, Defendant Wetzel, who is the only person who could have released him from solitary confinement.

73. As a direct and foreseeable result of this deprivation, Plantiff Jones was held without human contact for nearly four years, and has suffered:
   a. Loss of mental health;
   b. Stress;
   c. Anxiety;
   d. Depression;
   e. Mental Anguish;
   f. Fear, and
   g. Treatment which fell below the minimum standards required by the Eighth Amendment to the Constitution.

Wherefore, Plantiff Jones respectfully requests that this Honorable Court enter Judgement in his favor and against Defendant Wetzel, in an amount in excess of $75,000.00, along with any and all other relief this Court so deems and is permitted by Law.

Respectfully submitted,
(S)SHAMEL JONES EZ#-2128
SCI-PHOENIX

14.

## AFFADAVIT OF UNSWORN DECLARATIONS

74. in support of title 18.Pa.c.s.§4904 & 28 u.s.c §1746; <u>Adickees V.SH.Kress & CO.</u>, 398 u.s. 144,158,n.17,90.sct,1598[1970] Fed.R.Civ.Proc. 56,[E] I, <u>Shamel Jones</u>, the Plantiff does so avers that my unsworn declarations will be tittled as "Facts" herein listed above and below & Is True and Correct to the best of my knowledge and belief, and that my unsworn declarations will be subjected to the penalty of perjury.

Dated: march 10, 2022

CC: FILE

PRISONERS MAIL BOX

RULE UTILIZED_

(S)<u>Shamel Jones</u>
 SCI-Phoenix
 1200 Mokychic Rd.
 Collegeville Pa.-19426

15.

IN THE UNITED STATES EASTERN DISTRICT COURT OF PENNSYLVANIA
CIVIL DIVISION

| | |
|---|---|
| SHAMEL JONES<br>PLANTIFF | :<br>: Docket# |
| V. | : |
| John Wetzel, Sectary George little, of the pennsylvaina Doc, | : Jury Trial Demanded<br>: U.S. AMENDMENT V.J.J. |
| Defendants; | :<br>: |

## -NOTICE TO PLEAD-

You have been sued in the court, if you wish to defend against the claims set forth in the following pages you must take action within the following pages you must take action within 30-days after this complaint and notice is served by entering a written appearance personally or by attorney and filing in writting with the court, your defense or obllections to the claims set forth against you, you are warned that if you fail to do so the court's with out further notice for any money claimed in the complaint or for any other relief notice requested by the plantiff, you may loose money or property or other rights important to you.

you should take this paper to your lawyer at once if you do not have a lawyer go to or telephone the office set forth below this office can provide you with information about hirring a lawyer if you cannot afford one this office maybe able to provide you with information about agencies that may offer legal services to establish elligible person's at a reduced fee or no fee...

<u>Pa DOC OFFICE OF CHIEF COUNSEL</u>

<u>1920 Technology PKWY</u>
<u>MECHANICSBURG PA-17050</u>

<u>PRISONERS MAIL BOX RULE UTILIZED</u>
CC:FILE

DATED: 3-10-22
(S) <u>SHAMEL JONES#EZ-2128</u>

SHAMEL JONES # EZ-2128
SCI-Phoenix
1200 MOKYChic RD
Collegeville PA-19426

RECEIVED
SCRANTON

MAR 10 2022

PER _____
        DEPUTY CLERK

CERTIFIED MA[IL]

7020 0640 0000 46[__]

The United States District Court
   The Middle District
William J. Nealon Federal Bldg &
U.S. Courthouse
235 N. Washington Ave.
P.O. Box - 1148
Scranton PA-18501