**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SHAMEL JONES** | |
| **Plaintiff,** | |
| **v.** | |
| **EMPLOYEES OF THE DOC, STATE CORRECTIONAL FACILITY AT SCI-PHOENIX, MAIL ROOM SUPERVISOR KELLY LONG, FEDEX SHIPPING AND GROUND MAIL SERVICES CARRIERS, SECRETARY GEORGE LITTLE, and SECRETARY JOHN WETZEL** | **CIVIL ACTION NO.  22-1190** |
| **Defendants.** | |

## MEMORANDUM OPINION

**Rufe, J.**                                                          **March 25, 2024**

Plaintiff Shamel Jones, a prisoner incarcerated at State Correctional Institution-Greene ("SCI-Greene"), brings this *pro se* civil action under 42 U.S.C. § 1983 based on the conditions of his confinement and the alleged loss of his property by the Pennsylvania Department of Corrections during his transfer from SCI-Phoenix to SCI-Greene. Jones alleges violations of his rights under the First, Fourteenth, and Eighth Amendments to the Constitution. Defendants John Wetzel and George Little, each former Secretaries of the Pennsylvania Department of Corrections, have filed a joint motion to dismiss the claims against them for failure to state a claim. Defendant Kelly Long, a DOC mail room supervisor, has moved separately to dismiss the claims against her. For the reasons stated below, both motions to dismiss will be granted.

## I.   BACKGROUND

The following facts, as alleged in the Amended Complaint, are taken as true for purposes of deciding Defendants' motions to dismiss. In June 2021, Plaintiff Shamel Jones, then an inmate at State Correctional Institution-Phoenix ("SCI-Phoenix"), signed paperwork indicating that he would receive institutional support to be removed from the Restricted Release List ("RRL") to the general population if he completed the DOC's "45-day 4-Phase Step Down Program."[1] Jones completed the program and, in December 2021, he began waiting for a transfer.[2] However, due to the COVID-19 pandemic, his and other inmates' transfers were placed on hold.[3] Jones was reassured that his completion of the Step Down Program would be taken into consideration and that his chances for returning back to the general population were unaffected.[4] On March 10, 2022, Jones filed a Complaint in the Middle District of Pennsylvania against George Little, then-Acting Secretary of the Pennsylvania Department of Corrections ("DOC"), and John Wetzel, former Secretary of the DOC, challenging the conditions of his confinement based on his continued placement on the RRL.[5]

On March 23, 2022, Jones was called to the Inmate Property Room at SCI-Phoenix so his property could be re-inventoried and packed up pursuant to a transfer to SCI-Greene.[6] After his

---

[1] Am. Compl. at p. 4 ¶¶ 3–4 [Doc. No. 21]; *see also* Am. Compl., Ex. B [Doc. No. 21] (DOC document marked with the address for SCI-Phoenix and signed by Plaintiff on June 20, 2021 indicating that the "Central Office Recommendation" was for Plaintiff to complete the step down plan, at which time he would "be reviewed and supported for RRL removal"). Due to inconsistencies in the paragraph numbers of the Complaint and Amended Complaint, the Court will include both page numbers and paragraph numbers in its citations to those documents.

[2] Am. Compl. at p. 4 ¶¶ 2–4, p. 6 ¶ 20 [Doc. No. 21].

[3] *Id.* at p. 4 ¶ 2 [Doc. No. 21].

[4] *Id.* at p. 4 ¶¶ 2–3 [Doc. No. 21].

[5] Compl. [Doc. No. 1], *Jones v. Wetzel*, No. 22-358 (M.D. Pa.) (Conner, J.).

[6] Am. Compl. at p. 1 ¶ 1, p. 10 ¶ 1 [Doc. No. 21].

possessions were packed, Jones was told he was four boxes over the limit.[7] Given the option of destroying the extra boxes or shipping them at his own expense, he chose to sign a cash slip for the shipment of the four boxes, with understanding that they would be transported by a commercial carrier.[8] On March 24, 2022, Jones was transferred from SCI-Phoenix to SCI-Greene.[9] Upon his arrival at SCI-Greene, Jones was placed in the Management Control Unit ("MCU") at the direction of the Secretary of the DOC.[10] Within the MCU, he was placed in the L-Block, which is part of the MCU's Intensive Management Unit ("IMU").[11] Jones contends that he has suffered from a dramatic deviation in living standards from those who are in general population, including:

> [L]ower quality food then [sic] other inmates in general population[,] . . .
> prohibit[ion] from attending . . . or participating in any of the educational
> programs which are available to the prisoners in general population[,] . . . being
> denied the available programs for any inmate who would wanna take them for
> parole purposes[,] [and] . . . being prevented from having contact visits and non
> contact visits with family members & or Clergy . . . .[12]

Jones also cites MCU policies that deny him efficient exercise equipment and deprive him of the opportunity to participate in communal religious services.[13] Jones contends that he is confined to a cell that is colder than general population cells at night, and which has little to no heat during

---

[7] *Id.* at p. 10 ¶ 3.

[8] *Id.* at p. 10 ¶ 3, p. 11 ¶ 6.

[9] *Id.* at p. 11 ¶ 7.

[10] *Id.* at p. 5 ¶ 8, p. 9 ¶ 43; Defs. Little and Wetzel's Mot. Dismiss, Ex. 7, at p. 1 [Doc. No. 26-7] (April 20, 2022 letter from Superintendent Michael J. Zaken denying Plaintiff's appeal of his MCU placement and stating that the decision was made "at the direction of the Secretary of the Department of Corrections").

[11] Am. Compl. at p. 5 ¶ 10 [Doc. No. 21].

[12] *Id.* at p. 16.

[13] *Id.* at p. 17 ¶¶ 9–10.

the winter.[14] Finally, Jones alleges that he has been confined to a unit with only five inmates, two of whom suffer from psychological problems, "which is very much unstable[ ] to be around."[15]

Then, on April 3, 2022, Jones filed two administrative grievances (Form DC-804). The first grievance related to his placement in the MCU, which he characterized as retaliation for filing this lawsuit.[16] The second grievance stated that the four boxes he shipped still had not arrived at SCI-Greene.[17] On April 8, 2022, a DOC property officer brought Jones only three of the four boxes that were shipped from SCI-Phoenix.[18] Jones learned that the boxes were shipped by FedEx.[19] The Amended Complaint identifies the following allegedly missing items:

(1) One Yamaha keyboard and adapter, valued at $389.99;
(2) One Proamp bass amplifier, valued at $329.00;
(3) One pair of New Balance sneakers, valued at $65.17;
(4) One pair of Nike sneakers, valued at $65.85;
(5) Over 1,500 photos of loved ones, valued at $1,500.00;
(6) Criminal trial transcripts and evidence, valued at $1,400.00;
(7) Civil exhibits and other documents for this case, valued at $1,700.00;
(8) Civil exhibits and other documents for two other civil cases, valued at $1,700; and
(9) Legal books and magazines, valued at $367.00.[20]

---

[14] *Id.* at p. 17 ¶ 13.

[15] *Id.* at p. 7 ¶ 32, pp. 7–8 ¶ 33.

[16] Defs. Little and Wetzel's Mot. Dismiss, Ex. 5, at p. 5 [Doc. No. 26-5] (Grievance # 975385); *see also* Am. Compl. at p. 5 ¶ 15, p. 9 ¶ 42 [Doc. No. 21]. Although the Amended Complaint describes each of Jones's grievances by reference number, it is at times inconsistent and at other times silent regarding the dates on which those grievances were filed and adjudicated. The Court generally defers to the handwritten dates on the DC-804 Forms for each submission, with acknowledgment that the submissions were not received by DOC officials on those dates due to delays in the DOC's grievance filing system.

[17] Defs. Little and Wetzel's Mot. Dismiss, Ex. 2, at p. 8 [Doc. No. 26-2] (Grievance # 975387); *see also* Am. Compl. at p. 10 ¶ 8, p. 13 ¶ 18, p. 19 ¶¶ 20–21 [Doc. No. 21].

[18] Am. Compl. at p. 9 ¶ 1 [Doc. No. 21].

[19] *Id.* at p. 4 ¶ 7.

[20] *Id.* at p. 11 ¶¶ 8–9, p. 12 ¶¶ 10–12.

Later on April 8, 2022, immediately after learning that one of the boxes had not been delivered, Jones filed a third grievance describing the missing box and the items it contained.[21] On April 9, 2022, Jones submitted an Inmate Request Slip (Form DC-135A) to the mail room at SCI-Greene requesting a copy of an itemized receipt from FedEx, but he was told that the mail room did not have such documentation.[22] Over the following week, Jones filed three more grievances (a total of six that month). Two of the grievances related again to the missing box— including new arguments that the DOC's use of FedEx had cost Jones more than if it had used another carrier[23]—and the other grievance re-raised issues concerning his MCU placement.[24]

Around that time, the DOC's Program Review Committee ("PRC") issued a "Progress Report and Specific Rationale for Continued Placement or for Transfer" (Form DC-141, Part 4) concerning Jones's placement in the MCU.[25] The PRC determined that Jones had been properly "placed in the MCU for IMU Phase 1 per the Secretary of the Pennsylvania Department of Corrections," he had "not received any misconducts," he would "hold a block worker position in the MCU," and he would "continue his General Population status (IMU Phase 1) on the Management Control Unit (MCU)."[26] Over the followings weeks, DOC Grievance Officers issued initial responses to Jones's six grievances, each of which were denied on the merits or

---

[21] Defs. Little and Wetzel's Mot. Dismiss, Ex. 4, at p. 5 [Doc. No. 26-4] (Grievance # 976398); *see also* Am. Compl. at p. 10 ¶¶ 8–10, p. 14 ¶ 1, p. 19 ¶¶ 20–21 [Doc. No. 21].

[22] Am. Compl. at p. 12 ¶¶ 13–14 [Doc. No. 21].

[23] Defs. Little and Wetzel's Mot. Dismiss, Ex. 1, at p. 2 [Doc. No. 26-1] (Grievance # 976351, dated April 10, 2022); *id.*, Ex. 3, at p. 8 [Doc. No. 26-3] (Grievance # 977466, dated April 17, 2022); *see also* Am. Compl. at p. 15 ¶ 13, p. 19 ¶¶ 20–21, p. 10 ¶ 10 [Doc. No. 21].

[24] Defs. Little and Wetzel's Mot. Dismiss, Ex. 6, at p. 2 [Doc. No. 26-6] (Grievance # 976114, dated April 13, 2022); *see also* Am. Compl. at p. 6 ¶ 17 [Doc. No. 21].

[25] Am. Compl. at p. 5 ¶ 14 [Doc. No. 21]; *see also* Defs. Little and Wetzel's Mot. Dismiss, Ex. 7, at p. 3 [Doc. No. 26-7].

[26] Defs. Little and Wetzel's Mot. Dismiss, Ex. 7, at p. 3 [Doc. No. 26-7].

rejected on procedural grounds.[27] Then, over the next four months, Jones pursued multiple rounds of appeals of those decisions—both first-level appeals to his Facility Manager and second-level requests to the DOC Secretary's Office of Inmate Grievances and Appeals ("SOIGA").[28] One of the appeals stemmed directly from the PRC Report, not a grievance.[29]

Jones contends that the DOC intentionally withheld copies of its officers' adjudications, thereby violating his constitutional rights and frustrating his attempts to exhaust the administrative procedures available to him.[30] Although some of Jones's appeals were dismissed on unrelated procedural grounds,[31] SOIGA declined to reach the merits of two of the appeals because Jones admitted he had not received the Facility Manager's findings on first-level appellate review.[32] The Amended Complaint does state, however, that Jones's challenge to his placement in the MCU (arising directly from the PRC's Report) did result in a final merits review from Superintendent Michael J. Zaken.[33]

On August 8, 2022, Jones filed an Amended Complaint against three named defendants: (1) Kelly Long, identified as an "Inmate Mail Room Supervisor"; (2) FedEx Shipping and Mail Carrier Handling Services ("FedEx"); and (3) George Little, who at that time was serving as the

---

[27] *See generally id.*, Exs. 1–6 [Doc. Nos. 26-1, 26-2, 26-3, 26-4, 26-5, 26-6].

[28] *Id.*

[29] *See id.*, Ex. 7 [Doc. No. 26-7]; *see also* Am. Compl. at p. 5 ¶ 14, p. 6 ¶¶ 18–19 [Doc. No. 21].

[30] Am. Compl. at p. 9 ¶¶ 4–6, p. 10 ¶¶ 8–10, p. 15 ¶¶ 11–12, p. 18 ¶¶ 4–14, p. 19 ¶¶ 15–25 [Doc. No. 21].

[31] *See, e.g.*, Defs. Little and Wetzel's Mot. Dismiss, Ex. 2, at p. 1 [Doc. No. 26-2] (SOIGA dismissal of Grievance # 975387 for failure to provide legible documentation); *id.*, Ex. 6, at p. 1 (initial rejection of Grievance # 976114 for failure to submit within 15 days after the relevant events).

[32] *See, e.g.*, *id.*, Ex. 3, at p. 1 [Doc. No. 26-3] (rejecting appeal for final review as to grievance numbers 976398 and 977466, each of which related to the missing FedEx box, because Plaintiff had "not yet received the Facility Manager's response for either of these grievances" and he was required to "mail a request to the Facility Grievance Coordinator at SCI PHX in order to obtain a copy of their responses").

[33] Am. Compl. at p. 6 ¶ 19 [Doc. No. 21]; *see also* Defs. Little and Wetzel's Mot. Dismiss, Ex. 7, at pp. 1, 4 [Doc. No. 26-7] (April 20 and May 27, 2022 letters from Zaken denying Plaintiff's appeals and finding that he was "appropriately placed in the Management Control Unit").

Acting Secretary of the DOC.[34] FedEx has not been served or entered an appearance in this litigation. Although John Wetzel was not named in the Amended Complaint, he and Defendant Little filed a joint motion to dismiss for failure to state a claim.[35] Defendant Long has moved separately to dismiss the claims against her.[36] The Court now considers the motions to dismiss.

## II.  STANDARD OF REVIEW

Jones is proceeding *in forma pauperis*.[37] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, and the Court must dismiss the Amended Complaint if it fails to state a claim. Defendants have also moved to dismiss the Complaint pursuant to Rule 12(b)(6). Whether a complaint fails to state a claim under either authority is governed by the same standard,[38] which requires determining whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[39] "At this early stage of the litigation, [the Court] accept[s] the facts alleged in [Jones's] *pro se* complaint as true, draw[s] all reasonable inferences in [his] favor, and ask[s] only whether that complaint, liberally construed, contains facts sufficient to state a plausible . . . claim."[40] Conclusory allegations do not suffice.[41] As Jones is proceeding *pro se*, the Court construes his allegations liberally.[42]

---

[34] Am. Compl. [Doc. No. 21].

[35] Defs. Little and Wetzel's Mot. Dismiss [Doc. No. 26]. Construing the allegations in the body of the Amended Complaint liberally, the Court will continue to treat Wetzel as a named Defendant for purposes of deciding the present motions to dismiss.

[36] Def. Long's Mot. Dismiss [Doc. No. 63].

[37] Order, May 23, 2022 [Doc. No. 12].

[38] *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).

[39] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).

[40] *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quotation marks and original modifications omitted).

[41] *Iqbal*, 556 U.S. at 678.

[42] *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013)).

### III. DISCUSSION[43]

Jones brings federal claims under 42 U.S.C. § 1983. Section 1983 is not a source of substantive rights, but a means of vindicating violations of federal constitutional and statutory rights committed by state actors.[44] To state such a claim, Jones therefore must allege (1) a deprivation under the Constitution or laws of the United States, (2) by a person acting under color of state law.[45] In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, therefore a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims.[46]

There are two tracks for supervisory liability under § 1983. First, "a supervisor may be personally liable . . . if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations."[47] Alternatively, supervisory policymakers may be liable if they, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm."[48]

---

[43] The Prison Litigation Reform Act ("PLRA") requires a plaintiff inmate to exhaust the administrative remedies available to him before bringing any action under § 1983. 42 U.S.C. § 1997e(a). However, "exhaustion is an affirmative defense which can be waived if not properly preserved by a defendant." *Smith v. Mensinger*, 293 F.3d 641, 647 n.3 (3d Cir. 2002) (citing *Ray v. Kertes*, 285 F.3d 287 (3d Cir. 2002)). As the motions do not raise the issue of exhaustion, the Court need not address it.

[44] *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) (citation omitted).

[45] *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).

[46] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998) (citations omitted); *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct." (emphasis in original) (quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 677)).

[47] *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 (3d Cir. 2010) (quotation marks omitted) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)).

[48] *A.M. ex rel. J.M.K.*, 372 F.3d at 586 (quotation marks omitted) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)); *see also Santiago*, 629 F.3d at 129 n.5.

### A.  Amended Complaint

As a threshold matter, the Court's ruling on the present motions to dismiss will rely solely on the facts alleged and claims raised in the Amended Complaint. The initial Complaint brought claims concerning Jones's earlier placement on the RRL and time spent in solitary confinement. The Amended Complaint now brings claims based on Jones's transfer to SCI-Greene, his placement in the MCU, and the loss of his personal possessions during the transfer. "In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity."[49] In other words, "the most recently filed amended complaint becomes the operative pleading."[50] Furthermore, the "liberal construction of a pro se amended complaint does not mean accumulating allegations from superseded pleadings."[51]

However, Jones is representing himself (proceeding *pro se*) and may not have appreciated that his Amended Complaint would replace and supersede his initial Complaint. He also might not have understood that the Court cannot disregard the Federal Rules of Civil Procedure to consider all of the allegations and claims he filed at different times. Accordingly, the Court will dismiss certain claims with prejudice, but it will give Jones an opportunity to file a complete and comprehensive second amended complaint as to the other allegations and claims the Court dismisses without prejudice.[52] When drafting his second amended complaint, Jones should be mindful of the Court's reasons for dismissing the claims in his Amended Complaint, as further explained below.

---

[49] *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) (citing *Palakovic v. Wetzel*, 854 F.3d 209, 220 (3d Cir. 2017); 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1476 (3d ed. 2019)).

[50] *Garrett*, 938 F.3d at 82.

[51] *Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (per curiam).

[52] *See Angelo v. NVR, Inc.*, No. 18-523, 2020 WL 1443214, at *4 (D. Del. Mar. 24, 2020) ("Plaintiff is reminded that should he opt to file a second amended complaint, all allegations shall be contained in one pleading . . . .").

B.  **Claims Against Kelly Long**

Jones alleges that Defendant Kelly Long, a DOC mail room supervisor, violated Jones's constitutional rights in connection with the disappearance of the box containing his personal belongings. The Amended Complaint states claims against Long under the Due Process Clause of the Fourteenth Amendment.[53] Broadly construed, Jones may also be raising First Amendment violations against Long for denying his right of access to the courts and retaliating against him for engaging in protected speech, given that he alleges that the missing box contained a substantial volume of legal materials related to his civil and criminal cases.[54]

The Amended Complaint states that Jones is bringing § 1983 claims against Long in her individual capacity. To the extent that Jones is pursuing an official-capacity claim against Long, such a claim is precluded. The Eleventh Amendment bars suits against a state in federal court unless the state has waived its immunity.[55] The Commonwealth of Pennsylvania and its agencies, including the DOC, have not waived that immunity here.[56] Claims against state officials in their official capacities for monetary damages are treated as claims against the Commonwealth and are therefore barred.[57] Additionally, the Commonwealth and its employees acting in their official capacities are not considered "persons" for purposes of bringing a § 1983

---

[53] *See* Am. Compl. at p. 23 ¶ 2, p. 24 ¶ G [Doc. No. 21].

[54] *See id.* at p. 9 ¶ 1 [Doc. No. 21] (stating, under the heading "Denial Access to the Courts," that "[t]he 4th Box that came up missing contained all of Plaintiff's Filed Grievances Exhibits and Evidence to substantiate his civil and criminal Claims to his cases . . . ."); *id.* at p. 4 ¶ 7 (stating, under the heading "Retaliation [sic]," that Plaintiff was transferred and his property was not shipped properly to SCI-Greene "For The Purpose of Retaliation").

[55] *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) (citing *Welch v. Tex. Dep't of Highways and Pub. Transp.*, 483 U.S. 468, 472–73 (1987)).

[56] *See* 42 Pa. Cons. Stat. § 8521(b).

[57] *A.W. v. Jersey City Pub. Schs.*, 341 F.3d 234, 238 (3d Cir. 2003); *see also Kokinda v. Pa. Dep't of Corr.*, 779 F. App'x 944, 948 (3d Cir. 2019) (per curiam) ("The District Court properly concluded that Kokinda's claimed violations of §[] 1983 . . . against the DOC and the individual prison staff members sued in their official capacities are barred by the Eleventh Amendment." (citation omitted)); *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978))).

claim.[58] The Court will dismiss with prejudice all official-capacity claims against Long. The Court will also dismiss with prejudice all claims against SCI-Phoenix, which is an agency of the Commonwealth.

The Court next considers the claims against Long in her individual capacity. "State officials, sued in their individual capacities, are 'persons' within the meaning of § 1983."[59] The Eleventh Amendment does not protect state officials from being sued in their individual capacities, "even if the actions which are the subject of the suit were part of their official duties[.]"[60] However, Jones does not allege any facts at all regarding how Long was involved with the disappearance of the box containing Jones's personal belongings. The Amended Complaint fails to identify the DOC facility at which she was employed, the nature of her supervisory responsibilities, any actions she took, or any communications she made. Accordingly, all individual-capacity claims against Long will be dismissed without prejudice.

### C.  Claims Against John Wetzel and George Little

Jones also asserts individual-capacity claims against Wetzel and Little.[61] To the extent that Jones asserts claims against SCI-Phoenix, SCI-Greene, or the DOC, or against Wetzel and Little in their official capacities, which are in essence claims against their employing state agency, such claims fail for the same reasons discussed above as to Long. The Court considers each individual-capacity claim in turn.

---

[58] *Will*, 491 U.S. at 71.

[59] *Hafer v. Melo*, 502 U.S. 21, 31 (1991).

[60] *Slinger v. New Jersey*, 366 F. App'x 357, 360 (3d Cir. 2010) (citing *Hafer*, 502 U.S. at 31).

[61] *See* Pl.'s Resp. Opp'n Mot. Dismiss at 4 [Doc. No. 44] ("Wetzel [and] Little . . . are all sued in their individual capacity . . . .").

1.   <u>Count IV: Eighth Amendment Cruel and Unusual Punishment</u>

The Eighth Amendment prohibits the infliction of cruel and unusual punishment.[62] Cruel

and unusual punishment is punishment that "violates civilized standards of humanity and

decency."[63] Prison conditions are cruel and unusual if they deprive inmates of basic human

needs, such as food, sanitation and medical care.[64] An inmate challenging the conditions of his

confinement must show that the deprivation was objectively serious and that a prison official had

a sufficiently culpable state of mind, that is, he or she acted with deliberate indifference.[65]

Whether a deprivation is objectively serious is measured by society's view of the risk to the

prisoner's health and safety, that is, "whether 'it violates contemporary standards of decency to

expose anyone unwillingly to such a risk.'"[66] The Eighth Amendment does not require

comfortable prisons.[67] However, "prison officials must ensure that inmates receive adequate

food, clothing, shelter, and medical care."[68]

Jones has failed to plead facts suggesting that the present conditions of his confinement

rise to the level of violating the Eighth Amendment. The Amended Complaint states explicitly

that Jones is now considered to be in "General Population Custody Status," and the alleged facts

suggest that Jones's present conditions are less restrictive than when he was earlier placed on the

---

[62] U.S. Const. amend. VIII.

[63] *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997).

[64] *Clark v. Coupe*, 55 F.4th 167, 179 (3d Cir. 2022); *Dongarra v. Smith*, 27 F.4th 174, 178 (3d Cir. 2022) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 417–18 (3d Cir. 2000).

[65] *Clark*, 55 F.4th at 179 (quoting *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020)); *see also Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

[66] *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 257 (3d Cir. 2010) (quoting *Helling v. McKinney*, 509 U.S. 25, 36 (1993)) (emphasis omitted).

[67] *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 373 (3d Cir. 2019) (quoting *Rhodes*, 452 U.S. at 349).

[68] *Id.* (quoting *Farmer*, 511 U.S. at 832).

RRL.[69] Jones contends that his placement in the MCU has led to the denial of certain privileges available to other inmates classified as general population. He claims he is served lower quality food, has limited visitation rights, and is prevented from attending certain programs (including educational and parole opportunities as well as "Games & Sports" programming).[70] He also contends that he is required to exercise in "the RHU [r]ecreation cage" with worse equipment.[71]

Certain of Jones's other allegations regarding the conditions of confinement are contradicted by statements elsewhere in the Amended Complaint, or appear to be related to his time at previous facilities other than SCI-Greene. For example, Jones contends that "for the past 4 years" his cell has been colder than general population cells, and "for the past 4 ½ years [he] has been almost totally deprived of all meaningful human contact, physical activity, personal property, and mental stimulation."[72] However, Jones had only been at SCI-Greene for approximately five months at the time the Amended Complaint was filed. Moreover, these allegations are inconsistent with other statements in the Amended Complaint indicating that Jones now interacts at least with the five other inmates in his unit, is given access to a recreational area (even if smaller and less-equipped than Jones would like), has accumulated a significant volume of personal possessions, and is permitted virtual visits.[73]

---

[69] *See* Am. Compl. at p. 7 ¶ 24 [Doc. No. 21] ("Plaintiff . . . is Considered General Population Custody Status."); *id.* at p. 7 ¶ 28 ("Plaintiff has been cleared by the Defendants to be cleared to be taken off of 'RRL' & Placed back into General Population"); *id.* at p. 17 ¶ 9 ("[P]laintiff is considerd [sic] ge[neral] population . . . .").

[70] Am. Compl. at p. 16, p. 7 ¶ 25 [Doc. No. 21].

[71] *Id.* at p. 17 ¶ 9. Jones also refers to restrictions on his ability to attend religious programming and to meet with members of the clergy in accordance with his Muslim faith. *See, e.g.*, *id.* at p. 17 ¶ 10. Although the Religious Land Use and Institutionalized Persons Act ("RLUIPA") provides a statutory right of action against state recipients of federal funds, it does not permit an action against defendants, including state officials, in their individual capacities. *Sharp v. Johnson*, 669 F.3d 144, 154–55 (3d Cir. 2012).

[72] Am. Compl. at p. 17 ¶¶ 12–13 [Doc. No. 21].

[73] *Id.* at p. 7 ¶¶ 29, 32, p. 11 ¶ 5, p. 17 ¶ 9.

A plaintiff must allege "deprivations denying 'the minimal civilized measure of life's necessities,'" and not merely the denial of a "'comfortable prison[ ] . . . .'"[74] Jones's Eighth Amendment conditions-of-confinement claim will be dismissed without prejudice.

> 2.  Count I: First Amendment Retaliation

The First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in constitutionally protected speech.[75] "Official retaliation for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected right.'"[76] A plaintiff bringing a First Amendment retaliation claim must allege "'(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action.'"[77] Courts in the Third Circuit approach "First Amendment retaliation claims brought by inmates . . . 'with skepticism and particular care' because such claims are easy to allege and difficult to prove."[78]

Defendants do not contest that an inmate who files a grievance has engaged in protected speech, nor do they dispute that transferring an inmate to another facility could constitute a retaliation.[79] Rather, Defendants argue only that the Amended Complaint fails to plead a causal

---

[74] *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes*, 452 U.S. at 347, 349).

[75] *Hartman v. Moore*, 547 U.S. 250, 256 (2006) ("[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out . . . ." (citing *Crawford-El v. Britton*, 523 U.S. 574, 592 (1998); *Perry v. Sindermann*, 408 U.S. 593, 597 (1972))).

[76] *Starnes v. Butler Cnty. Ct. of Common Pleas*, 971 F.3d 416, 429 (3d Cir. 2020) (quoting *Hartman*, 547 U.S. at 256).

[77] *Mirabella v. Villard*, 853 F.3d 641, 649 (3d Cir. 2017) (quoting *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006)).

[78] *Mack v. Yost*, 968 F.3d 311, 324 (3d Cir. 2020) (quoting *Bistrian v. Levi*, 912 F.3d 79, 96 (3d Cir. 2018)).

[79] Defs. Little and Wetzel's Mot. Dismiss at 18 [Doc. No. 26] ("[F]or purposes of this Motion, Commonwealth Defendants do not dispute that filing grievances and Complaints would constitute a constitutionally protected activity . . . [or] that the transfer of an inmate to another state-correctional facility could conceivably constitute retaliation."); *see also Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (noting that the filing of a grievance by

connection between Jones's speech and the alleged retaliatory actions, particularly given the timeline of events. Accepting the alleged facts as true, Jones was transferred from SCI-Phoenix to SCI-Greene on March 24, 2022.[80] His initial grievances were filed no earlier than April 3, 2022—*i.e.*, only after the DOC had already finalized his transfer.[81] Defendants contend that the grievances could not have caused retaliation in the form of a transfer that had already happened.

The Third Circuit has held that such a chronology may not necessarily be fatal. A plaintiff may state a retaliation claim, even where allegedly retaliatory conduct pre-dates the filing of a formal grievance, by pleading facts showing that prison officials were put on advance notice (*e.g.*, through oral complaints or requests for blank forms).[82] Indeed, Jones did more than make an oral complaint or request a blank grievance form before he was transferred: He filed this federal lawsuit out of SCI-Phoenix.[83] Furthermore, the DOC's records corroborate Jones's allegation that the placement decision was made at the Secretary's direction, therefore Jones has met his burden in pleading the level of direction required for supervisory liability.[84]

The remaining issue, then, is whether Jones has sufficiently pleaded facts showing that: (1) Defendants were aware of the initial lawsuit or had received advance notice that Jones

---

an inmate "implicate[s] conduct protected by the First Amendment" (quoting *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003))); *Calloway v. Bauman*, No. 20-2337, 2022 WL 4357468, at *8 (M.D. Pa. Sept. 20, 2022).

[80] Am. Compl. at p. 11 ¶ 7 [Doc. No. 21].

[81] *See* Defs. Little and Wetzel's Mot. Dismiss, Ex. 5, at p. 5 [Doc. No. 26-5] (Grievance # 975385); *id.*, Ex. 2, at p. 8 [Doc. No. 26-2] (Grievance # 975387).

[82] *See Watson*, 834 F.3d at 422–23.

[83] *See* Am. Compl. at p. 9 ¶ 2 [Doc. No. 21] ("Plaintiff should have never filed that Complaint . . . ."). Jones filed his first Complaint in the Middle District of Pennsylvania. *See* Compl. [Doc. No. 1], *Jones v. Wetzel*, No. 22-358 (M.D. Pa.) (Conner, J.). On March 28, 2022, the Honorable Christopher C. Conner of the Middle District of Pennsylvania transferred the case to this District. Order, Mar. 28, 2022 [Doc. No. 7], *Jones v. Wetzel*, No. 22-358 (M.D. Pa.) (Conner, J.).

[84] *See, e.g.*, Defs. Little and Wetzel's Mot. Dismiss, Ex. 7, at p. 1 [Doc. No. 26-7]; *see also Wayne v. Clark*, No. 21-4209, 2022 WL 17993131, at *6 (E.D. Pa. Dec. 29, 2022) (finding sufficient personal involvement by current and former DOC Secretaries to deny motion to dismiss in § 1983 action involving IMU designation).

intended to file administrative grievances or other complaints against them; and (2) Defendants, by transferring Jones to SCI-Greene and placing him in the MCU, were retaliating against him for filing the lawsuit or planning to file grievances. The facts alleged in the Amended Complaint fail to make those showings.

First, Defendants Little and Wetzel raise the point that they were not served with the initial complaint until July 22, 2022.[85] Jones has not pleaded facts raising an inference that they were notified sooner about the lawsuit, or that Defendants or their subordinates knew about Jones's intent to file grievances before the transfer decision was made. Second, the transfer decision alone cannot support a retaliation claim. Jones knew as early as December 2021 that he would be transferred to at least some other location given that he had been "waiting [f]or [t]ransfer" beginning at that time.[86] Third, Jones has not pleaded sufficient facts to state a retaliation claim based on his placement specifically in the MCU. Even assuming that the MCU placement was an adverse action, Jones has failed to allege facts plausibly suggesting that the filing of this lawsuit (or the anticipation of administrative grievances) was a substantial or motivating factor in the placement determination.[87] Jones's First Amendment retaliation claim will be dismissed without prejudice.

---

[85] Defs. Little and Wetzel's Mot. Dismiss at 4 [Doc. No. 26].

[86] Am. Compl. at p. 4 ¶ 2 [Doc. No. 21].

[87] To be clear, the Court does not suggest that Jones is required to plead direct evidence of retaliation to state a plausible claim. The vast majority of plaintiffs must rely on circumstantial evidence to prove a retaliatory motive "[b]ecause motivation is almost never subject to proof by direct evidence . . ." *Lawson v. Ferguson*, No. 22-2365, 2023 WL 2770820, at *2 (3d Cir. Apr. 4, 2023). However, Jones makes only vague references to comments by unidentified prison officials indicating that the lawsuit and grievances *hypothetically* would impact Little and Wetzel's perception of him; the Amended Complaint does not suggest that the officials who made those comments had any decisionmaking authority or, more important, any direct or indirect knowledge about why Jones was placed in the MCU. *See* Am. Compl. at p. 8 ¶ 40. Additionally, the timing of Jones's Amended Complaint vis-à-vis his placement, standing alone, is not such an "unusually suggestive temporal proximity" that it establishes a retaliatory motive. *Lawson*, 2023 WL 2770820 at *2 (quoting *Watson*, 834 F.3d at 422).

3.   Count III: Due Process under the Fourteenth Amendment

Jones raises procedural due process claims. Procedural due process requires "the state to afford an adequate level of process (notice and an opportunity to be heard) before depriving persons of a protected interest."[88] To state a claim of deprivation of procedural due process rights, a plaintiff must allege that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'"[89]

Although the Amended Complaint on its face limits the scope of Jones's due process claim to the loss of his personal property in the missing FedEx box, the Third Circuit has held that inmates who are subject to administrative confinement also have a protected liberty interest in being released to the general population.[90] The Court will broadly construe Jones's allegations as raising due process claims on both of those grounds.[91]

The Court first addresses the missing FedEx box. "A prisoner in Pennsylvania cannot state a constitutional claim based on the loss of his property."[92] The procedural requirements of the Due Process Clause of the Fourteenth Amendment provide no remedy for an unauthorized intentional deprivation of property by a state employee so long as "a meaningful postdeprivation remedy for the loss is available."[93] The post-deprivation remedy available here is to pursue

---

[88] *Mammaro v. N.J. Div. of Child Prot. And Permanency*, 814 F.3d 164, 169 (3d Cir. 2016) (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)).

[89] *Hill v. Borough of Kutztown,* 455 F.3d 225, 233–34 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).

[90] *See Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000).

[91] *See, e.g.*, Pl.'s Opp'n Mot. Dismiss at 7–8 [Doc. No. 44] (raising due process arguments as to MCU placement).

[92] *Cox v. Pa. Dep't of Corr.*, No. 23-4814, 2023 WL 8773688, at *3 (E.D. Pa. Dec. 19, 2023) (citing *Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013)).

[93] *Spencer*, 543 F. App'x at 213 (quotation marks omitted) (quoting *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)).

claims directly against FedEx. Indeed, Jones's briefings in response to Defendants' motion to dismiss acknowledge that FedEx is the responsible party.[94] The Court will dismiss with prejudice Jones's procedural due process claim arising from the loss of the box.

Next, the Court addresses Jones's procedural due process claim based on his placement in the MCU. Even though the Third Circuit has recognized a liberty interest in returning to general population from administrative confinement, an inmate cannot state a due process claim unless he alleges facts identifying a procedural deficiency.[95] Jones attended an initial review with the PRC.[96] He then received written findings from the PRC providing its rationale for placing Jones in the MCU.[97] Jones appealed the PRC's findings to Superintendent Zaken, who denied Jones's request for relief on the merits.[98] Even accepting the alleged facts as true, Jones has availed

---

[94] Pl.'s Resp. Opp'n Mot. Dismiss at 8 [Doc. No. 44] (referring to "FedEx's responsibility for losing the property"). FedEx has not been served or entered an appearance in this case. The Court will require Jones by separate order to show cause why the claims against FedEx should not be dismissed.

In the alternative, even if the named Defendants were responsible for intentionally depriving Jones of his personal property—an allegation not borne out by the facts currently alleged—the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA") provides an adequate remedy for a willful deprivation of property. *Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (per curiam); 42 Pa. Cons. Stat. §§ 8541–46. If the DOC or its employees negligently deprived Jones of his personal property—again, a presently unsupported allegation—Jones could bring a claim under § 8542(b)(2) of the PSTCA, which creates an exception to the Commonwealth's immunity for claims relating to "[t]he care, custody or control of personal property . . . in the possession or control of the local agency." Pa. Cons. Stat. § 8542(b)(2); *Scott v. Kauffman*, No. 19-695, 2022 WL 3084302, at *8 (M.D. Pa. Aug. 3, 2022).

Finally, the grievance process is yet another adequate post-deprivation remedy. *See Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000). The Amended Complaint indicates that Jones successfully submitted three grievances arising from the missing box and received at least one facility manager's response on first-level appeal (even setting aside the other decisions on initial review, first-level appeal, and second-level appeal which Jones claims not to have received). *See* Defs. Little and Wetzel's Mot. Dismiss, Ex. 4, at p. 5 [Doc. No. 26-4] (Grievance # 976398); *id.*, Ex. 1, at p. 2 [Doc. No. 26-1] (Grievance # 976351, dated April 10, 2022); *id.*, Ex. 3, at p. 8 [Doc. No. 26-3] (Grievance # 977466, dated April 17, 2022); Am. Compl. at p. 10 ¶¶ 8–10, p. 12 ¶¶ 13–14, p. 14 ¶¶ 1, 6, p. 15 ¶ 13, p. 19 ¶¶ 20–21 [Doc. No. 21]. The facility manager's response, which Jones admits he received, explicitly states that the DOC filed a claim with FedEx, which issued a check for $157.86 to pay for the loss. Defs. Little and Wetzel's Mot. Dismiss, Ex. 4, at p. 2 [Doc. No. 26-4].

[95] *See Shoats*, 213 F.3d at 144–47.

[96] Am. Compl. at p. 5 ¶ 14 [Doc. No. 21].

[97] *Id.*; *see also* Defs. Little and Wetzel's Mot. Dismiss, Ex. 7, at p. 3 [Doc. No. 26-7].

[98] Am. Compl. at p. 6 ¶ 19 [Doc. No. 21] ("On April 20, 2022 Plaintiff received the Appeal Response . . . from F/m Zaken, who ultimately stated that the 'Review of all Available information, indicates that Plaintiff is appropriately [sic] Placed . . . .'"); *id.* at p. 9 ¶ 43.

himself of proceedings which "plainly satisfied the Due Process requirements for confinement of the inmate in administrative custody."[99] Jones's procedural due process claim based on his MCU placement will be dismissed without prejudice.

### 4. Count II: Right of Access to the Courts

Prisoners have a well-settled "constitutional right to access to the courts, which requires access to 'adequate law libraries or adequate assistance from persons trained in the law' for filing challenges to criminal sentences, both direct and collateral, and civil rights actions."[100] This right "has a number of constitutional roots, including the Due Process Clause and the First Amendment."[101] Prisoners may only raise access-to-courts claims to challenge their sentences and conditions of confinement.[102] The Third Circuit has clarified that the right of access to the courts continues even after a civil rights complaint has been filed.[103] An inmate stating a denial-of-access claim "must allege both that he was denied 'the tools . . . need[ed] . . . in order to challenge the conditions of [his] confinement' and that an actual injury resulted."[104] If a plaintiff alleges that defendants inhibited his opportunity to present a legal claim, he must show that the underlying claim is "'nonfrivolous' or 'arguable'" and that he has "no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit."[105]

---

[99] *Shoats*, 213 F.3d at 145 (citing *Hewitt v. Helms*, 459 U.S. 460, 477 (1983)).

[100] *Allah v. Seiverling*, 229 F.3d 220, 224 (3d Cir. 2000) (quoting *Bounds v. Smith*, 430 U.S. 817, 828 (1977)).

[101] *Allah*, 229 F.3d at 224 n.4 (citing *Peterkin v. Jeffes*, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988)).

[102] *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (citing *Lewis v. Casey*, 518 U.S. 343, 354–55 (1996)).

[103] *Rivera v. Monko*, 37 F.4th 909, 915 (3d Cir. 2022) ("A prisoner's right to access the courts beyond the filing of the complaint was not yet clearly established in the Supreme Court or in this Court. It is now established in this Court, going forward.").

[104] *Id.* (quoting *Lewis*, 518 U.S. at 355).

[105] *Monroe*, 536 F.3d at 205 (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)).

Jones cites the Third Circuit's decision in *Monroe v. Beard*, which addressed right-of-access claims brought by prisoners who alleged that their legal materials (briefs, transcripts, exhibits, references, and other similar papers) had been confiscated.[106] That case is distinguishable given that Jones does not allege the confiscation of anything here. The Amended Complaint describes only the loss of Jones's materials by FedEx while in transit, which once again illustrates Jones's failure to allege the personal involvement of Defendants Little or Wetzel in the incidents giving rise to this claim. In any event, the Third Circuit held in *Monroe* that even the confiscation of an inmate's legal materials is insufficient to state a right-of-access claim if the plaintiff fails to allege facts supporting the other required elements.[107] Even liberally construing Jones's allegations (and assuming that Jones has met his burden in alleging that his claims are nonfrivolous), Jones has failed to allege the absence of a remedy. The available remedy to seek compensation for his lost personal property, legal materials or otherwise, would be to pursue relief against FedEx, the party responsible for losing the box. Jones also clearly has had an opportunity to pursue his civil rights claims on the merits, given that he has filed claims and litigated them vigorously before this Court.[108] Jones's right-of-access claim will be dismissed without prejudice.

## IV. CONCLUSION

For the reasons stated herein, Defendant Kelly Long and Defendants John Wetzel and George Little's motions to dismiss will be granted. An order follows.

---

[106] *Monroe*, 536 F.3d at 206.

[107] *Id.* (citing *Harbury*, 536 U.S. at 416–17).

[108] Although Jones also refers vaguely to potential claims of actual innocence in his criminal cases and further states that "evidence" in the missing box "undoubtly [sic]" would have supported such claims, the Amended Complaint does not provide any facts about what that evidence was, what the claims in the criminal cases would have been, or how the evidence was essential to Jones's ability to bring the claims. Am. Compl. at p. 12 ¶ 10 [Doc. No. 21].