## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**SHAMEL JONES**

                    **Plaintiff,**

    **v.**

**JOHN WETZEL, et al.**

                    **Defendants.**

**CIVIL ACTION NO. 22-1190**

---

## MEMORANDUM OPINION

**Rufe, J.**                                                   **September 30, 2025**

*Pro se* Plaintiff Shamel Jones filed suit against Defendants Superintendent John Wetzel, Secretary George Little, and Mailroom Supervisor Kelly Long (together, the "Commonwealth Defendants") and FedEx Shipping & Mail Carrier Handling Services. The Commonwealth Defendants have moved for summary judgment on the merits and based on qualified immunity. For the following reasons, the motion will be granted.

### I.    BACKGROUND

The parties did not submit a joint stipulation of material facts. As such, the pertinent facts here are drawn from Plaintiff's complaint and the parties' briefs, as well as the transcript of Plaintiff's deposition. Where the facts are disputed, they are viewed in the light most favorable to the Plaintiff, as the non-moving party.

In June 2021, Jones, then an inmate at State Correctional Institution-Phoenix ("SCI-Phoenix"), signed paperwork indicating that he would receive institutional support to be removed from the Restricted Release List ("RRL") to the general population if he completed the

Department of Corrections' ("DOC") "4-Phase Step Down Program."[1] Jones completed the program by December of 2021.[2]

In March of 2022, Jones was called to the Inmate Property Room at SCI-Phoenix so his property could be re-inventoried and packed up pursuant to a transfer to SCI-Greene.[3] After his boxes were packed, Jones was told he was four boxes over the limit.[4] Given the option of destroying the extra boxes or shipping them at his own expense, he chose to sign a cash slip for the shipment of the four boxes, with the understanding they would be transported by a commercial carrier.[5] On March 23 or 24, 2022, Jones was transferred from SCI-Phoenix to SCI-Greene.[6] Upon his arrival at SCI-Greene, Jones was placed in the Management Control Unit ("MCU") at the discretion of the Secretary of the DOC.[7] Jones claims he was in a Restrictive Housing Unit ("RHU") when he was in the MCU under solitary confinement conditions.[8] Jones alleges that in the MCU he had restricted access to visitation with family, friends and the media; and could not participate in educational programs outside the MCU or religious services or congregated worship.[9] He also alleges that he could not go to the main yard, meet with general population inmates (including jailhouse lawyers), or go to the main library, and had restricted access to exercise equipment, water, and bathroom facilities on the MCU yard.[10]

---

[1] Pl.'s Second Am. Compl. ¶¶ 21-22 [Doc. No. 111].

[2] *Id*. ¶ 23.

[3] *Id.* ¶¶ 29-39.

[4] *Id*. ¶ 33.

[5] *Id*. ¶¶ 33-37.

[6] *Id.* ¶ 39; Defs.' Mem. Supp. Mot. Summ. J. ¶¶ 67-68 [Doc. No. 144].

[7] Pl.'s Second Am. Compl. ¶¶ 39-40 [Doc. No. 111]; Defs.' Mem. Supp. Mot. Summ. J. ¶¶ 67-70 [Doc. No. 144].

[8] Pl.'s Second Am. Compl. ¶¶ 152-55 [Doc. No. 111].

[9] *Id.* ¶ 152.

[10] *Id.*

On April 3, 2022, Jones filed two administrative grievances.[11] The first grievance related to his placement in the MCU, which he characterized as retaliation for filing a complaint regarding his placement on the RRL.[12] The second grievance stated that the four boxes he shipped still had not arrived at SCI-Greene.[13] On April 8, 2022, a property officer brought Jones only three of the four boxes that were shipped from SCI-Phoenix. Jones claims this fourth box contained newly discovered evidence relevant to his criminal case, documents related to his civil cases, and missing property including photographs, sneakers, a keyboard, and an amplifier.[14]

Later on April 10, 2022, Jones filed a third grievance describing the missing box and the items it contained.[15] Over the following week, Jones filed three more grievances. Two of the grievances related to the missing box—including new arguments that the DOC's use of FedEx had cost Jones more than if it had used another carrier—and the other grievances re-raised issues concerning his MCU placement.[16]

Around that time, the DOC's Program Committee Review ("PCR") issued a "Progress Report and Specific Rational for Continued Placement or for Transfer" concerning Jones's placement in the MCU.[17] The PRC determined that Jones had been properly "placed in the MCU

---

[11] Defs.' Mot. Summ. J., Ex. 17 [Doc. No. 144-17] (Grievance # 975385); Defs.' Mot. Summ. J., Ex. 18 at 1 [Doc. No. 144-18] (Grievance History). The second grievance was provided to the Court with Defendants' Motion to Dismiss. *See* Defs.' Mot. Dismiss Ex. 2 [Doc. No. 26-2] (Grievance # 975387).

[12] Grievance # 975385 [Doc. No. 144-17].

[13] Grievance # 975387 [Doc. No. 26-2].

[14] Pl.'s Second Am. Compl. ¶¶ 58-63 [Doc. No. 111]; Pl.'s Opp. Defs.' Mot. Sum. J. Attach. at 13 [Doc. No. 150-1] (Grievance # 976398).

[15] Grievance # 976398 [Doc. No. 150-1].

[16] Defs.' Mot. Summ. J., Ex. 19 [Doc. No. 144-19] (Grievance # 977466) (dated April 17, 2022); Defs.' Mot. Dismiss, Ex. 1 [Doc. No. 26-1] (Grievance # 976351) (dated April 10, 2022); Defs.' Mot. Dismiss, Ex. 6 [Doc. No. 26-6] (Grievance # 976114) (dated April 13, 2022).

[17] Defs.' Mem. Supp. Mot. Summ. J. ¶ 68. [Doc. No. 144]; Defs.' Mot. Summ. J., Ex. 14  [Doc. No. 144-14] (PRC Review, 2022); Defs.' Mot. Summ. J., Ex. 16 [Doc. No. 144-16] (Appeal of MCU).

for IMU Phase 1 per the Secretary of the Pennsylvania [DOC]," he had "not received any misconducts," he would "hold a block worker position in the MCU," and he would "continue his General Population status (IMU Phase 1) on the [MCU]."[18] Over the following weeks, DOC Grievance Officers either denied the grievances on the merits or rejected them on procedural grounds.[19] Jones pursued first-level appeals to his Facility Manager and second-level requests to the DOC Secretary's Office of Inmate Grievances and Appeals ("SOIGA").[20] Jones acknowledges that an appeal challenging the PCR report on his placement in the MCU did result in a final merits review from Superintendent Michael J. Zaken.[21]

On August 8, 2022, Jones filed an Amended Complaint against three named Defendants: (1) Kelly Long, identified as an "Inmate Mail Room Supervisor"; (2) FedEx Shipping & Mail Carrier Handling Services ("FedEx"); and (3) George Little, who at that time was serving as the Acting Secretary of the DOC.[22] Although John Wetzel was not named in the initial Amended Complaint, he and Little filed a joint Motion to Dismiss for failure to state a claim.[23] Long filed a separate motion to dismiss.[24] The Court granted the motions to dismiss without prejudice.[25]

Jones then filed a second Amended Complaint, against Wetzel, Little, Long, and FedEx Shipping & Ground Mail Services Carriers.[26] Defendants did not file a Motion to Dismiss the

---

[18] PRC Review, 2022 [Doc. No. 144-14].

[19] Grievance # 975385 [Doc. No. 144-17]; Grievance History [Doc. No. 144-18]; Grievance # 977466 [Doc. No. 144-19].

[20] Grievance History [Doc. No. 144-18].

[21] Pl.'s Second Am. Compl. ¶¶ 77-79 [Doc. No. 111].

[22] Pl.'s Am. Compl. at 3 [Doc. No. 21].

[23] Mem. Supp. Defs. Little & Wetzel's Mot. Dismiss [Doc. No. 26].

[24] Mem. Supp. Def. Long's Mot. Dismiss [Doc. No. 63].

[25] Order Mot. Dismiss at 1 [Doc. No. 63]; Order Mot. Dismiss at 1 [Doc. No. 26].

[26] *See* Pl.'s Second Am. Compl. [Doc. No. 111]. FedEx has never been served, nor have they entered an appearance in this litigation. Further, Jones accepted compensation from FedEx for the missing box. Defs.' Mot. Summ. J., Ex. 1, Pl.'s Dep. at 121 [Doc. No. 144-1].

second Amended Complaint. The parties proceeded to discovery and Wetzel, Little, and Long now seek summary judgment on the merits and based on qualified immunity.[27]

## II.    LEGAL STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[28] A fact is "material" if it could affect the outcome of the suit, given the applicable substantive law, and a dispute is "genuine" if the evidence presented is such that a reasonable jury could return a verdict for the nonmoving party.[29] In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.[30]

A court may not weigh the evidence or make credibility determinations at the summary judgment stage.[31] Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record.[32] This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."[33] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.[34] Therefore, if, after making all reasonable inferences in favor of the non-moving party, the court

---

[27] Defs.' Mem. Supp. Mot. Summ. J. [Doc. No. 144].

[28] Fed. R. Civ. P. 56(a).

[29] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[30] *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

[31] *Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998).

[32] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

[33] *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004).

[34] *Anderson*, 477 U.S. at 249–50.

determines there is no genuine dispute as to any material fact, then summary judgment is appropriate.[35] Finally, although this Court liberally construes Plaintiff's *pro se* filings, Plaintiff must set forth facts, supported by affidavits or other evidence of record, sufficient to survive summary judgment.[36]

## III.    DISCUSSION

Jones collectively alleges multiple violations of his constitutional rights under 42 U.S.C. § 1983. To state a claim under §1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[37] Section 1983 does not provide a cause of action to challenge violations of DOC policy or state law that do not also include violation of a right secured by the Constitution and laws of the United States.

Defendants argue that Jones has not met his burden and summary judgment should be granted on all Jones's remaining claims: (1) Eighth Amendment deliberate indifference, cruel and unusual punishment, and "poor prison conditions" claims; (2) Fourteenth Amendment due process claims alleging he has been unable to challenge his placement on RRL and MCU, for unconstitutionally harsh conditions in RRL and/or MCU, and for his lost property; (3) Equal Protection Clause claims alleging he has been denied the same privileges as inmates in the general population; and (4) First Amendment retaliation, access to courts, and supervisor liability claims.[38] Defendants also assert that Long was not properly named under § 1983 and that

---

[35] *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

[36] *Houseknecht v. Doe*, 653 F. Supp. 2d 547, 555 (E.D. Pa. 2009).

[37] *West v. Atkins*, 487 U.S. 42, 48 (1988).

[38] *See generally* Mem. Supp. Defs.' Mot. Summ. J. [Doc. No. 147].

Defendants are entitled to the affirmative defense of qualified immunity.[39] Because the Court will grant summary judgment on the merits of the claims, the Court does not reach the issue of qualified immunity or whether Long is an appropriate defendant.

>    **A.    Plaintiff Failed to Exhaust Claims of Retaliation.**

The Prison Litigation Reform Act (PLRA) states that "[n]o action shall be brought with respect to prison conditions under [§1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as available are exhausted."[40] Therefore, exhaustion of administrative remedies is a threshold question.

Jones contends that the DOC intentionally withheld copies of its officers' adjudications, thereby violating his constitutional rights and frustrating his attempts to exhaust administrative remedies for his access to courts and supervisory liability claims.[41] Defendants argue that Jones failed to exhaust his administrative remedies regarding his complaints of retaliation, access to courts, and supervisory liability.[42] Defendants claim Jones failed to exhaust his access to the courts claim, but the Defendants' Statement of Material Facts described Jones properly appealing the grievance to the highest level.[43] Defendants do not point to evidence of a failure to exhaust the supervisory liability claim.[44] Defendants acknowledge that Jones did file a grievance for being placed in the MCU, rather than general population, as retaliation for filing a civil lawsuit about his placement on the RRL. However, Defendants argue that he did not appeal denial of his

---

[39] *Id.* at 9, 35.

[40] 42 U.S.C. § 1997e(a).

[41] Pl.'s Opp. Defs.' Sum. J. at 24 [Doc. No. 150].

[42] Mem. Supp. Defs.' Mot. Summ. J. at 26 [Doc. No. 147].

[43] Defs.' Mem. Supp. Mot. Summ. J. ¶ 96 [Doc. No. 144].

[44] Mem. Supp. Defs.' Mot. Summ. J. at 26 [Doc. No. 147].

grievance to the highest level, and Jones has not produced evidence showing exhaustion.[45]

Defendants contend that Jones never filed a grievance for the mail room's failure to mail his civil

complaint, and Jones has not provided evidence of such a grievance.[46] Defendants claim Jones

never filed a grievance after Little purportedly told him to drop his complaint, and Jones has not

provided evidence of such a grievance.[47]

      A grievance procedure may be rendered "unavailable" when a prison official thwarts an

inmate's ability to utilize it.[48] Intimidation, or "serious threats of retaliation and bodily harm,"

may render a remedy unavailable.[49] Here, Jones has failed to establish that he was prevented

from filing such a grievance regarding retaliation against him; and he filed other grievances.

Because Jones failed to exhaust these claims, summary judgment will be granted on the

retaliation claims.[50]

      Jones did file a grievance challenging the loss of his shipped property which he claims

contained evidence and documents relevant to his criminal case and other civil cases and fully

exhausted it through appeals.[51]

---

[45] Defs.' Mem. Supp. Mot. Summ. J. ¶ 76 [Doc. No. 144]; Grievance # 975385 [Doc. No. 144-17]; Grievance History [Doc. No. 144-18].

[46] Jones Dep. at 95 [Doc. No. 144-1]; Defs.' Mem. Supp. Mot. Summ. J. ¶ 83-96 [Doc. No. 144]; Grievance History [Doc. No. 144-18].

[47] Jones Dep. at 111 [Doc. No. 144-1]; Defs.' Mem. Supp. Mot. Summ. J. ¶ 88 [Doc. No. 144]; Grievance History [Doc. No. 144-18].

[48] *Ross v. Blake*, 578 U.S. 632, 643 (2016); *see also Rinaldi v. United States*, 904 F.3d 257, 266-67 (3d Cir. 2018).

[49] *See Rinaldi*, 904 F.3d at 267.

[50] *See Simmons v. Szelewski*, 642 Fed. Appx 95, 99 (3d Cir. 2016) (finding that the plaintiff failed to exhaust administrative remedies regarding alleged retaliation and confirming grant of summary judgment).

[51] Grievance 977466 [Doc. No 144-19]; Pl.'s Opp. Defs.' Mot. Summ. J. Attach., Ex. E, at 24-36 [Doc. No. 150-1].

**B.    Plaintiff Failed to Adduce Sufficient Evidence for his Eighth Amendment Claims.**

Jones alleges that his Eighth Amendment rights were violated because his placement in the MCU "deprived [him] of the right to basic human needs, human contact, [e]xercise, [and] [m]ental [s]timulation."[52]

A claim that an inmate's Eighth Amendment rights are violated requires the plaintiff to establish that prison officials were deliberately indifferent to conditions of confinement that constitute cruel and unusual punishment.[53] There is a two-pronged test for determining whether a prison official violated the Eighth Amendment. The first prong is an objective determination of whether the deprivation is "sufficiently serious" such that the official's act or omission resulted "in the denial of the minimal civilized measure of life's necessities."[54] Life's necessities include "food, clothing, shelter, medical care, and reasonable safety."[55] "[E]xtreme deprivations" are required to establish a claim for unconstitutional confinement conditions.[56]

The second prong is a subjective test as to whether the official had a "sufficiently culpable state of mind," i.e., one of "deliberate indifference to inmate health or safety."[57] The official must have actually known or been aware that the condition created an excessive risk to the prisoner's health or safety.[58] To be liable, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety."[59]

---

[52] Pl.'s Second Am. Compl. ¶ 143 [Doc. No. 111].

[53] *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991).

[54] *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations omitted).

[55] *Tillma v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000).

[56] *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

[57] *Farmer*, 511 U.S. at 834 (internal quotation and citations omitted).

[58] *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (citing *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001)).

[59] *Id*. at 142 (quoting *Farmer*, 511 U.S. at 837).

       1.    <u>Substantial Deprivation</u>

Jones alleges that Defendants kept him in solitary confinement conditions, regardless of the official designation as RRL, IMU, or MCU.[60] While the Court considers the duration and severity of confinement regardless of official designation, Jones has failed to adduce sufficient evidence to show he was kept in unconstitutionally restrictive conditions.[61] Conclusory claims that the MCU inflicted torturous and malicious acts of cruel and unusual punishment are unsupported; the actual allegations do not approach this level.[62]

The claims that Jones is prohibited from contact visitation, from getting married, from participating in non-MCU programming, from participating in religious services or congregated worship, from obtaining meaningful exercise equipment, from attending services or interacting with inmates outside the MCU, from going to the main yard, from bringing a drink of water to the MCU yard, and from attending the main library or having access to jailhouse lawyers, are not comparable to conditions of perpetual solitary confinement.[63] As Jones admitted in his deposition, in the MCU: he is able to hold a job as a block worker;[64] he is permitted between four and five "stream" or no contact visits per month;[65] he gets four phone calls per day;[66] he is

---

[60] Pl.'s Second Am. Compl. ¶ 210(G)(4) [Doc. No. 111].

[61] *Hutto v. Finney*, 437 U.S. 678, 686 (1978) ("[T]he length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards.").

[62] Pl.'s Second Am. Compl. ¶¶ 134-40 [Doc. No. 111].

[63] *Id.* ¶¶ 154-60. *See, e.g., Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000) (describing solitary confinement conditions including virtual isolation; confinement to a cell for twenty-three hours a day for five days a week and twenty-four hours a day for two days a week; eating meals in isolation; sole contact being with DOC officials; no contact with family; no educational, vocational, or organizational programs; and no access to the library).

[64] Defs.' Mot. Summ. J. Ex. 1, Pl.'s Dep. at 63–64 [Doc. No. 144-1].

[65] *Id*. at 64.

[66] *Id*. at 66.

permitted a tablet;[67] he is permitted the same electronics as in the general population;[68] he is permitted to make vendor/commissary purchases;[69] he gets unlimited showers;[70] he gets three hours of yard time per day;[71] he is permitted to congregate with other MCU inmates every day;[72] he has access to legal materials on a computer;[73] there is some MCU programming;[74] and he is receiving regular psychological treatment.[75]

Jones does not allege nor provide supporting evidence for any claim he was denied any basic human needs, such as food, clothing, or shelter. Courts must be cognizant of the "fundamental difference" between deprivation of discretionary privileges that a prisoner in general population may enjoy and deprivation "of the basic necessities of human existence."[76] Although Jones has been in the MCU for three years, he has not shown that some restriction on general population privileges violate the Eighth Amendment.[77]

Limitations on contact visits are not sufficient to establish a claim for an Eighth Amendment violation.[78] Lack of sufficient exercise equipment, too, does not rise to the level of an Eighth Amendment violation, especially as he is permitted daily outdoor exercise. Jones has

---

[67] *Id*. at 66.

[68] *Id*. at 67.

[69] *Id*. at 67-68.

[70] *Id*. at 68.

[71] *Id*.

[72] *Id*. at 70.

[73] *Id*. at 72.

[74] *Id*. at 73.

[75] *Id*.

[76] *Young v. Quinlan*, 960 F.2d 351, 364 (3d Cir. 1992).

[77] Jones notes that prior to his placement in the MCU, he was on the RRL for four years. Pl.'s Opp. Defs.' Mot. Summ. J. at 8 [Doc. No. 150].

[78] *See Overton v. Bazzetta*, 539 U.S. 126, 136 (2003) (holding that a restriction to noncontact visitation does not violate the Eighth Amendment); *see also Naranjo v. Little*, No. 22-1890, 2024 WL 5479147, at *11 (W.D. Pa. July 18, 2024) (MCU restriction to noncontact visitation did not violate Eighth Amendment).

not demonstrated that he suffers ill effects from the lack of exercise equipment or that he has sought medical care related to his inability to exercise in the way he chooses.

Similarly, lack of access to the main yard or general population inmates and programming does not establish an Eighth Amendment violation. These restrictions do not deprive Jones of the basic necessities of life because he can congregate with other MCU inmates daily. Although the MCU conditions may be more restrictive than in general population, Jones has not shown that they approximate unconstitutional perpetual solitary confinement.

Jones has also not demonstrated a substantial deprivation based on lack of access to the main law library or jailhouse lawyers. He has access to a law library computer station with legal books, cases, and judicial decisions.[79]

The totality of circumstances of the conditions of Jones's confinement in the MCU are not "objectively, sufficiently serious" so as to "result in the denial of the minimal civilized measure of life's necessities."[80] The motion for summary judgment will be granted as to the Eighth Amendment claim.

### C.    Plaintiff Failed to Adduce Sufficient Evidence for his Fourteenth Amendment Due Process Claims.

Jones claims that he has a protected liberty interest in placement in general population housing, but that Defendants sent him to the MCU, which he describes as a Restrictive Housing Unit, with no opportunity to appeal or be heard. He also asserts that Long and FedEx violated his Fourteenth Amendment rights in connection with shipping the box that was lost.

---

[79] Jones's complaints about lack of access to religious services are better construed as First Amendment claims, not Eighth Amendment claims, and are discussed below with his other First Amendment claim.

[80] *Farmer*, 511 U.S. at 834 (internal quotations omitted) (citations omitted).

1.    <u>Procedural Due Process</u>

To succeed on a procedural due process claim, a plaintiff must show that: "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'"[81] Plaintiffs "must, at a minimum, prove recklessness or gross negligence and in some instance may be required to show a deliberate decision to deprive the plaintiff of due process."[82]

The Supreme Court has rejected the notion that "*any* change in conditions of confinement having a substantial adverse impact on the prisoner involved is sufficient to invoke the protections of the Due Process Clause."[83] Here, neither state law nor the Constitution has conferred a right on Jones to move to general population housing upon completion of the RRL step down program.[84] Only prison procedures and policy describe this process, and such policies cannot create a liberty interest unless they impinge on a freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."[85] Here, the policies do not impose atypical and significant hardship.

Jones does not have a liberty interest protected by the Fourteenth Amendment to be placed in general population housing or to a particular classification.[86] "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed on

---

[81] *Mulholland v. Gov't Cnty. of Berks*, 706 F.3d 227, 238 (3d Cir. 2013) (quoting U.S. Const. amend. XIV § 1).

[82] *Id*. (internal quotation omitted) (citation omitted).

[83] *Meachum v. Fano*, 427 U.S. 215, 224 (1976).

[84] *Id*. at 226-28; *Bracey v. Sec'y Pa. Dept. Corrs.*, 686 Fed. App'x 130, 135 (3d Cir. 2017) ("[T]here is no constitutional right to remain in the general prison population.").

[85] *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

[86] *Reynolds v. Warden Schuylkill Fed. Corr. Inst.*, No. 24-1942, 2024 WL 4164271, at *5 n.4 (3d Cir. Sep. 12, 2024) (citing *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976)).

him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."[87]

### 2.    Substantive Due Process

To the extent Jones intends his due process claim to allege a violation of substantive due process, he also fails to provide sufficient evidence for such a claim. The evidence is the same as that cited in support of his Eighth Amendment claim. Under the "more-specific-provision rule," "if a constitutional claim is covered by a specific constitutional provision, such as the . . . Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."[88]

Because Jones's claims concern the conditions of his confinement in the MCU, access to courts, and retaliation, which fit squarely within the Eighth and First Amendments, the more-specific-provision rule forecloses any substantive due process claim.

### 3.    Lost Property

Jones alleges negligent deprivation of property under the Fourteenth Amendment against Long and FedEx, claiming that they both violated shipping policy.[89] He claims Long failed to fill out a shipping manifest and declare a value before shipping the property, which Jones blames for the loss and lack of sufficient reimbursement of his property.[90] Negligent deprivation of property does not violate the Due Process Clause.[91] No evidence is provided here as to any negligence that resulted in a deprivation of his property. As Defendants present, even if Jones is alleging

---

[87] *Montanye v. Haymes*, 427 U.S. 236, 242 (1976).

[88] *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 261 (3d Cir. 2010) (applying the more-specific-provision rule).

[89] Pl.'s Second Am. Compl. ¶¶ 160-69 [Doc. No. 111].

[90] *Id.* ¶ 170.

[91] *Daniels v. Williams*, 474 U.S. 327, 328 (1986).

intentional deprivation of property, he still fails to produce any evidence to support a claim. A plaintiff cannot assert a claim under §1983 for an intentional deprivation of property by a state employee, "if a meaningful postdeprivation remedy for the loss is available."[92] Jones accepted compensation from FedEx, and he took advantage of the Pennsylvania DOC grievance procedure and appealed to the highest level.[93]

### D.     Plaintiff Failed to Adduce Sufficient Evidence for his Fourteenth Amendment Equal Protection Clause Claims.

Jones alleges his equal protection rights were violated based on the different treatment between general population inmates and inmates in the MCU, including lack of or restricted access to congregated worship services, contact visits with loved ones, and activities outside of a restricted housing unit.[94] Jones claims that the failure to treat MCU inmates the same as general population inmates violates his rights to equal protection.

The Equal Protection clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."[95] Jones does not allege an equal protection claim based on race, religion, or national origin, and inmates are not a protected class.[96] Nor does Jones argue that MCU inmates should be a protected class. Thus, he proceeds on a "class of one" theory. Under a class of one theory, "a plaintiff states a claim for violation of the Equal Protection clause when he 'alleges that he has been intentionally treated differently from others

---

[92] *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

[93] Defs.' Mot. Summ. J., Ex. 1, Pl.'s Dep. at 121 [Doc. No. 144-1]; *Cruz v. SCI-SMR Dietary Servs.*, 566 Fed. App'x 158, 160 (3d Cir. 2014); *Tillman*, 221 F.3d at 422.

[94] Pl.'s Second Am. Compl. ¶¶ 101-14 [Doc. No. 111].

[95] U.S. Const. amend. XIV, § 1.

[96] *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001). Jones notes, without providing supporting evidence, that the MCU disproportionately includes more African American and Latino inmates than White inmates who have committed similar crimes, Pl.'s Second Am. Compl. ¶ 197 [Doc. No. 111], but he does not make an equal protection claim on the basis of race.

15

similarly situated and that there is no rational basis for the difference in treatment.'"[97] Jones
acknowledges rational basis review applies to his claim.[98]

Jones alleges facts comparing his treatment to the treatment of general population
inmates. He does not allege facts comparing his treatment to other similarly situated MCU
inmates. If the MCU is viewed as a restrictive housing unit, then MCU inmates are not similarly
situated to general population inmates.[99] Even if the Court accepts that Jones is similarly situated
to general population inmates, there is a rational connection between his disparate treatment: his
history of misconduct and previous placement on the RRL.[100] The difference in treatment is
likely "reasonably related to legitimate penological interests."[101]

Failure to apply policies applicable to general population inmates to MCU inmates does
not rise to the level of a constitutional equal protection violation, and § 1983 does not provide a
cognizable cause of action for violations of internal DOC policy. Because Jones has not alleged a
basis for the claim that he is treated differently from similarly situated inmates without rational
basis, he has not provided sufficient evidence for an equal protection claim.

---

[97] *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000)).

[98] Pl.'s Second Am. Compl. ¶ 115 [Doc. No. 111].

[99] *Wilson v. Jin*, 698 F.App'x 667, 672 (3d Cir. 2017) (citing *Fogel v. Pierson*, 43 F.3d 1252, 1260-61 (10th Cir. 2006) ("RHU inmates are not similarly situated to general population inmates.").

[100] Defs.' Mot. Summ. J., Ex. 6, Misconduct History [Doc. No. 144-6]; Defs.' Mot. Summ. J., Ex. 1, Pl.'s Dep. at 34-35 [Doc. No. 144-1].

[101] *Turner v. Safley*, 482 U.S. 78, 89 (1987).

**E.    Plaintiff Failed to Adduce Sufficient Evidence for his First Amendment Claims.**

1.    Access to Religious Services

Jones's claims about restricted access to religious services are better construed as First Amendment claims, so the Court will evaluate them under the First Amendment framework.[102] Because *pro se* complaints shall be construed liberally, Jones's claims will also be construed as claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), which offers more protections than the First Amendment.[103] Under RLUIPA, once a plaintiff shows a substantial burden is placed on his religious exercise, the policy or practice is invalidated only if it is not reasonably related to legitimate penological interests. To survive summary judgment, a plaintiff alleging First Amendment freedom of religion violations must "show that the activities which he wishes to engage in are mandated by [his] religion."[104]

Jones's claims that he has been prohibited from accessing religious services are not sufficiently detailed to allege violations of the First Amendment or RLUIPA. In his complaint, Jones alleges in the MCU he is prohibited from "[p]articipating in any [r]eligious [s]ervices or congregated worships, [or] [p]racticing [p]laintiff['s] [r]eligion."[105] When asked about the claim in his deposition, he said there were no religious services in the MCU, that inmates were supposed to have religious congregation services every week but had none, and that he grieved

---

[102] "Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (internal citation omitted). However, an inmate only "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).

[103] 42 U.S.C. §§ 2000cc et. Seq; *Nunez v. Wolf*, 117 F.4th 137, 146 (3d. Cir. 2024).

[104] *Small v. Lehman*, 98 F.3d 762, 767 (3d. Cir. 1996) (quoting *Bryant v. Gomez*, 46 F.3d 948, 949 (9th Cir. 1995).

[105] Pl.'s Second Am. Compl. ¶ 152 [Doc. No. 111].

and appealed the issue all the way up but was denied.[106] Jones provided the court with his grievance and appeals on the issue.[107] He identified his religious preference as "Muslim-Other Moorish Science Temple."[108] In response to Jones's filed grievance regarding the lack of in-person or televised Moorish Science congregations or ceremonies, Defendant's facility admitted that "SCI Greene does not have worship services of Moorish Science Temple."[109] The SCI-Greene inmate handbook notes that the prison offers services for a more generalized "Nations of Islam" faith, but does not specify whether these services are accessible from the MCU.[110]

Because Jones has not shown that participation in a religious congregation is mandated by his religion, or that his religious exercise has been substantially burdened in another way, he cannot establish violations of the First Amendment or RLUIPA. Summary judgment will be granted on this claim.

### 2.     Access to Courts

"[P]risoners retain a right of access to the courts."[111] In order to succeed on a claim that the Defendants' actions have inhibited Plaintiff's opportunity to present a past legal claim, he must show "(1) that [he] suffered an 'actual injury'—that [he] lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that [he has] no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit."[112]

---

[106] Defs.' Mot. Summ. J., Ex. 1, Pl.'s Dep. at 143-45 [Doc. No. 144-1].

[107] Pl.'s Opp. Defs.' Mot. Summ. J. Attach. at 157-65 [Doc. No. 150-1].

[108] *Id*. at 160.

[109] *Id*.

[110] *Id*. at 138, 153.

[111] *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008).

[112] *Id*. (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)).

Plaintiff therefore must describe the arguable claim well enough to show the claim is "more than mere hope" and must describe the "lost remedy."[113]

Jones has failed to establish that he suffered an actual injury. He has not explained the nature of the legal documents lost or what claims they would have supported in any of his civil cases or in a post-conviction challenge in his habeas case. Jones refers to evidence that would establish his innocence of the crime of which he was convicted, but does not describe this evidence beyond references to DNA evidence and affidavits.[114] Jones asserts that the loss of his items disrupted his ability to timely file a successive PCRA petition, but he does not identify what claims such evidence would have enabled him to bring or how the claims were timely. The motion for summary judgment will be granted on this claim.

> **F.    Plaintiff Failed to Adduce Sufficient Evidence Showing Defendant Wetzel is Liable Under §1983 on a Theory of Supervisory Liability.**

A supervisor may be liable under § 1983 if Plaintiff: (1) identifies a specific supervisory practice or procedure that the supervisor failed to employ; (2) shows that the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury; (3) shows that the supervisor was aware that this unreasonable risk existed; (4) that the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.[115] "[I]t is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did."[116]

---

[113] *Id.* (citing *Christopher*, 536 U.S. at 416-17).

[114] Defs.' Mem. Supp. Mot. Summ. J. ¶¶ 98-101 [Doc. No. 144]; Defs.' Mem. Supp. Mot. Summ. J. Ex. 1, Pl.'s Dep. at 135–136, 132 [Doc. No. 144-1].

[115] *Brown v. Muhlenberg Township*, 269 F.3d 205, 216 (3d Cir. 2001).

[116] *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989).

Because Jones has failed to provide sufficient evidence showing constitutional injury, he likewise has failed to provide sufficient evidence to support a claim for supervisory liability. [117] Summary judgment will be granted.

## IV.   CONCLUSION

For the above reasons, Defendants' motion for summary judgment will be granted as to all claims. An order will be entered.

---

[117] *See Turner v. Varner*, 786 Fed. App'x 326, 329 (3d Cir. 2019) (holding that claims of supervisory liability failed because the record did not support an underlying constitutional violation); *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (reasoning that a supervisory liability claim "necessarily includes as an element an actual violation at the hands of subordinates").